Filed 07/30/26

VERMONT SUPERIOR COURT

Windham Unit

7 Court Street

Newfane VT 05345

802-365-7979

www.vermontjudiciary.org



CIVIL DIVISION

Case No. 22-CV-03819

---

## Tara Bourne v. Bruce Woodcock

---

## FINDINGS OF FACT, CONCLUSIONS OF LAW AND ORDER

Plaintiff Tara Bourne brought this action asserting claims of unjust enrichment, quantum meruit and promissory estoppel against Defendant Bruce Woodcock.[1] A bench trial was held in Windham County Courthouse on February 20, 2026. At the hearing Plaintiff testified and called Virginia Read and Adrian Cunningham as witnesses. Defendant did not testify or call any witnesses. Various exhibits were admitted by stipulation of the parties.

### A. Findings of Fact[2]

Plaintiff is 73 years old and lives in West Dover, Vermont. She has a 41-year-old daughter – Ms. Cunningham – and three grandchildren. She has worked in restaurants since she was 18 years old and also has experience in childcare. Presently she is working at the Hermitage Inn as a server and floor captain and looks after her youngest grandson two days a week.

Defendant is and has been largely self-employed as a builder, sub-contractor and woodworker. He has worked as a property manager, logger, sawyer, inventor and in various related trades. He has done that work most of his career. He also receives a small disability benefit for a military related injury.

The parties were longtime acquaintances – Plaintiff had "always kind of known who he was" – who began their relationship in 2014. At the time Defendant was and had been living and working on an estate in Dover, Vermont providing property caretaking and security in exchange for rent. He also had a series of sub-contracting and other jobs off the estate while he lived there. Plaintiff was living above a restaurant in West Dover when their relationship began. She was working at the Dover Forge Restaurant and also as a gardener in Manchester. During the first year the relationship was "a little crazy" because of Defendant's drinking. After the first year he did not drink for the next seven years.

---

[1] On February 20, 2026, Defendant withdrew his counterclaims of unjust enrichment and quantum meruit.

[2] The court makes the following findings of fact by a preponderance of the evidence based on the credible admissible evidence adduced at the trial.

Early in the relationship Defendant provided primary support while Plaintiff paid off debt resulting from a closed restaurant business.

Defendant had rarely used banks. Defendant's business ventures generally involved cash or barter transactions. While Plaintiff also received a portion of her income in cash she was not as averse as Defendant to using banks. Indeed, Plaintiff had a checking account at TD Bank when the parties formed their relationship. In 2016 Plaintiff added Defendant's name to that account. Subsequently the parties opened a joint checking account at People's Bank.

The parties decided to look for a home to purchase. Plaintiff engaged a real estate agent, Virginia Read,[3] to assist the couple. Ms. Read located a home at 1 Brickyard Road in East Dover for the couple to purchase and assisted them informally with a closing on the property. Defendant worked out a deal where he put down $ 80,000 and the balance of $ 30,000 was paid off as a seller's mortgage at $ 535 per month to Beth Brodie – the former owner.[4] The property was in need of substantial work. The owner of the property was Beth Brodie. Defendant purchased the property in his sole name with a deed prepared by Ms. Read and witnessed by Plaintiff. The date of the deed and closing was April 4, 2016. Defendant transferred the downpayment and closing costs in the amount of $84,355.69 to Plaintiff's bank account at the TD Bank. Plaintiff then wrote the checks to close on the property.

Plaintiff's name was not on the deed initially because of an outstanding tax debt to the State of Vermont. During the period of cohabitation Defendant did refer to the Brickyard Road property as "our house." Plaintiff "had no concerns" that it "wasn't half my house." Defendant would occasionally refer to Plaintiff as his wife.

In December 2017 Defendant requested Plaintiff continue to run the parties' checking account and pay the household expenses. Plaintiff agreed and did that. Plaintiff funded the bank accounts with her own income from gardening jobs, restaurant work and cash Defendant gave her – he gave her cash for expenses "regularly." Plaintiff and Defendant paid equal amounts of the mortgage and taxes for the property while they both lived there. Defendant gave her cash to deposit into the account for large material purchases for the home improvement. Neither Plaintiff or Defendant kept an accounting of their respective contributions to their joint accounts, of their barter with Ms. Brodie for mortgage credit or of their contributions to the property improvement. Both parties comingled deposits from and expenses for some of their self-employment ventures in their personal accounts.

Both parties worked hard to improve the property and pay expenses. Plaintiff and Defendant painted the exterior of the property. Plaintiff improved the landscaping of the

---

[3] Ms. Read has been a licensed real estate broker since 1978 and is a former member of the Vermont Board of Realtors.
[4] The terms of the mortgage included, "The mortgage will be paid off over 5 years in monthly installments of $539 from May 15, 2016 to April 15, 2021." This totals $32,340.00.

property including purchasing and installing an estimated $ 13,000 of shrubbery, perennial and annual plants. She assisted the construction by cleaning, running errands, handing up roofing materials and making meals for Defendant and friends and workers helping him. Plaintiff's aunt gifted her a stove worth $ 4,000. Defendant did the major construction work of restoring and improving the property. Defendant supplied cash for major materials purchases. Defendant constructed a greenhouse on the property. He also built a birdhouse and installed a piano for in the garden.

Plaintiff testified that the value of the property increased to $ 375,000 at the time she moved out in the spring of 2022. Ms. Read testified that the value of the property had increased to $ 450,000 as of the date of the final hearing.[5]

Plaintiff decided to resume her work in the food industry and located and purchased a 1973 GMC truck in New Hampshire on June 5, 2020. The purchase price was $30,900 and was supposed to include renovations to Plaintiff's specifications for use as a food truck. The purchase was financed by adding $30,000 to the mortgage agreement with Ms. Brodie and continuing the monthly payments in the same amount until the $30,000 was paid off. Plaintiff was dissatisfied with the renovations to the truck and Defendant then renovated the truck to Plaintiff's specifications and prepared the truck for Plaintiff's breakfast and lunch food service in Dover, Vermont. At various times he made repairs and upgrades to the truck at Plaintiff's request. The food truck was profitable.

The parties' relationship deteriorated after Defendant started drinking again. In February 2021 Plaintiff's aunt was diagnosed with lung cancer. Defendant was apparently very upset when he was told that he was not invited to go to Plaintiff's aunt's house. When Plaintiff went to visit her aunt, Defendant called her while drunk. He was drunk when she got home, and she felt he was insensitive. He told her that a neighbor had come over. In response to Defendant asking, "can you forgive me for my indiscretions" Plaintiff responded that she did not trust him. Plaintiff started sleeping in a spare bedroom. She then found text messages from Defendant's ex-wife on his phone. Defendant continued to drink – at times in front of Plaintiff.

Defendant asked Plaintiff to leave in May 2022 – her told her that if she "wasn't going to get over it [she] had to get out." She moved out the following month. Defendant offered Plaintiff $15,000 at the time of separation. Plaintiff did not accept that offer. Defendant "moved to Burlington with some girl."

Defendant offered to sign over ownership of the GMC truck and pay off the rest of the $30,000 added to the mortgage to purchase it and she accepted that offer.

The evidence suggests and the court finds that each party contributed half of the mortgage payments during their period of cohabitation. This was approximately

---

[5] These are not a *Krupp* findings. *Johnson v. Machia*, 2022 WL 16848169, at *1 (Vt. Nov. 10, 2022) (unpub. mem.). As noted below, the court did not find the testimony to be persuasive evidence of the value of the property as of the date of separation or the date of final hearing.

3

$18,5000 each between May 2016 and May 2022. Defendant paid off the balance of the mortgage – or about $ 23,000 – after separation.

Plaintiff and Defendant each contributed about half of the property tax payments during the period of cohabitation. An amount of about $ 3,800.00 apiece.

Plaintiff had sole possession of the food truck after the parties' separation and Defendant conveyed interest in the vehicle to her. Plaintiff valued the food truck at $39,000 after separation and sold it for $22,000 on or about June 6, 2024. Plaintiff sold the truck in part because of the hardship of operating such a venture in Vermont winters.

## B. Conclusions of Law

### a. Burdens of proof

Plaintiff's burden with respect to her claims is to prove the merits by a preponderance of the evidence. *Bartley-Cruz v. McLeod*, 144 Vt. 263, 264 (1984). Proof by a preponderance of the evidence is shown "when the equilibrium of proof is destroyed, and the beam inclines toward him who has the burden, however slightly. A bare preponderance is sufficient, though the scales drop but a feather's weight." *In re M.L.*, 2010 VT 5, ¶ 25 (quoting *Livanovitch v. Livanovitch*, 99 Vt. 327, 328 (1926) (cleaned up)). Thus, where the conflicting evidence is of equal weight, or where the Defendant's evidence outweighs the Plaintiff's, "the evidence of the [Plaintiff] does not preponderate." *In re Smith*, 169 Vt. 162, 174 (1999).

### b. Unjust enrichment

Plaintiff claims that Defendant has been unjustly enriched by Plaintiff's contribution of money, labor and services that enhanced the value of Defendant's property. Defendant disagrees. Plaintiff has the burden of proving that Defendant has been unjustly enriched.

Unjust enrichment is a common law cause of action. Restatement (Third) of Restitution and Unjust Enrichment § 28 (2011). *McLaren v. Gabel*, 2020 VT 8, ¶ 17, 211 Vt. 591. Under the Restatement,

> If two persons have formerly lived together in a relationship resembling marriage, and if one of them owns a specific asset to which the other has made substantial, uncompensated contributions in the form of property or services, the person making such contributions has a claim in restitution against the owner as necessary to prevent unjust enrichment upon the dissolution of the relationship.

Restatement (Third) of Restitution and Unjust Enrichment § 28 (2011); see also *McLaren v. Gabel*, 2020 VT 8, ¶ 24, 211 Vt. 591. The Restatement notes that under some jurisdictions, "persons who would be 'unmarried cohabitants' at common law may owe

4

legal duties to each other at the dissolution of the relationship, comparable to those traditionally imposed on the dissolution of a marriage." Restatement (Third) of Restitution and Unjust Enrichment § 28 (2011). A gifted benefit to a recipient does not result in their unjust enrichment. *Id*. However,

> [e]ven when a transfer between cohabitants is essentially gratuitous, it may be made in the expectation that the donor will share, directly or indirectly, in the resulting benefits. Decisions allowing restitution under § 28 involve an implicit determination that the contributions at issue were made on that basis—thereby distinguishing them from ordinary gifts—and that the claimant's expectation was justifiable.

*Id*. Furthermore,

> [w]hen they decide restitution claims between former cohabitants—as when they divide marital property incident to divorce—courts do not perform an accounting of the ordinary give-and-take of the domestic relationship, striking a balance to identify a net beneficiary. To make out a claim under this section, in other words, it is necessary but not sufficient to prove that the claimant gave to the defendant more than the claimant obtained in return. Restitution will be allowed for salient contributions made by the claimant to identifiable assets owned by the defendant, in circumstances such that the defendant would be unjustly enriched if restitution were denied. These are circumstances in which hindsight reveals that it would be inequitable to treat the contributions in question as an unqualified gift.

*Id*. Relative to real property,

> [s]ometimes a claimant can prove that property to which the defendant holds legal title was acquired under circumstances entitling the claimant to equitable ownership. Normally this requires a showing that the claimant furnished all or part of the purchase price, intending to acquire a corresponding ownership interest and not to make a gift or a loan, although title was recorded in the name of the defendant. Relief in such circumstances might be explained by reference to the doctrine of resulting trust, but a claim under this section does not depend on that formulation of the remedy.

*Id*. Plaintiff must establish the following elements in an unjust enrichment claim:

> In determining whether § 28 should be applied to a given set of circumstances, the trial court must still consider whether the long-recognized elements of unjust enrichment have also been met: "whether (1) a benefit was conferred on defendant; (2) defendant accepted the benefit; and (3) defendant retained the benefit under such circumstances that it would be inequitable for defendant not to compensate plaintiff for

5

its value." *Reed v. Zurn*, 2010 VT 14, ¶ 11, 187 Vt. 613, 992 A.2d 1061 (mem.) (quotation omitted); see also *Shattuck*, 2013 VT 1, ¶ 38, 193 Vt. 123 (Robinson, J., dissenting).

*McLaren*, 2020 VT 8, ¶ 25. *McLaren* addressed an unjust enrichment in involving a cohabitating unmarried couple that separated. In *McLaren*, the parties dated for over 20 years. They purchased a home putting only the defendant's name on the deed. Each contributed to the sale price and payments towards renovations. The property served as the defendant's primary residence, and parties engaged in a long-distance relationship, with the plaintiff spending weekends and holidays at the home. The relationship deteriorated and the parties separated. Plaintiff then filed suit "alleging unjust enrichment and breach of an implied contract, seeking to recover the money he had advanced for the ... property, the return of his separate personal property, and an accounting and division of joint personal property." *Id.* at ¶ 13. The trial court found in favor of the plaintiff, concluding that the defendant was unjustly enriched, and awarded the plaintiff the amount he contributed toward buying the house and making repairs, his personal items, and all jointly purchased items. The trial court did not consider the fair market value in its restitution award, only the actual sums that the plaintiff contributed.

On appeal, the Court looked to the specific circumstances, noting

> "[u]njust enrichment ... is based on the 'claimant's frustrated expectations.' Recovery is allowed because the claimant would not have conferred the benefit, 'except in the expectation that the parties' subsequent relationship would be something other than it proved to be.'" *Bonina v. Sheppard*, 78 N.E.3d 128, 132-33 (Mass. Ct. App. 2017); quoting Restatement § 28 cmt. c. ... A successful unjust enrichment claim in this context therefore depends on a determination that it was justified by the circumstances for plaintiff to expect that by giving defendant the money to purchase and renovate her home, he would share, directly or indirectly, in the resulting benefits—here, some semblance of virtual co-ownership of the property on Logging Hill Road, including the financial value that entailed—as a part of their ongoing domestic relationship.

*Id.* at ¶ 26. The Court found that there was significant evidence to support a finding that the plaintiff's expectation that he would share in the attributes of the property was justified under the circumstances. Additionally, the Court found that the contributions by the plaintiff were not gifts, but were made for his own long-term benefit as well.

Next, the Court addressed the calculation of restitution owed, determining that "the trial court abused its discretion in effectively awarding plaintiff the full amount it found he had contributed to the purchase and renovations of the . . . property." *Id.* ¶ 38. First, the Court stated that recovery was "limited to the money, services, and materials contributed to the property that is the subject of the claim, or to the division of the

property itself."[6] *Id*. ¶ 42. As such, "the trial court should have limited itself to the consideration of the benefits to defendant specifically related to the . . . property." *Id*. ¶ 43. Furthermore, in calculating the amount, the Court noted that "[r]ecovery in restitution differs from that awarded as damages: while damages represent the loss to the plaintiff, restitutionary recoveries are based on the defendant's unjust gain." *Id*. ¶ 45. Accordingly, the trial court should have calculated the net increase in the property which resulted from the plaintiff's contributions, not the exact dollar amount he had contributed.[7] The restitution amount is the plaintiff's proportionate contribution to the property's fair market value. The Court reiterated that "the trial court must measure the net benefit to defendant and the amount of the unjust increase to [defendant's] net worth that was made possible by the funds contributed by plaintiff." *Id*. ¶ 58.[8]

As noted above, Defendant purchased the property for $110,000. Defendant paid $84,355.60 at closing to purchase the property. There was $23,177 left to pay on the mortgage agreement when the parties separated – and Defendant made the balance of those payments. Both parties provided relatively equal sweat equity and payments for building and landscaping materials. Each party contributed one half of the mortgage and property tax payment from May 15, 2016, until May 22, 2022. As required by *McLaren*, to calculate the benefit obtained and retained by Defendant the court must determine the fair market value of the property to establish any restitutionary amount.

Plaintiff presented testimony from two witnesses regarding the value of the property – Plaintiff testified that the property was worth $ 375,000.00 when the parties separated and Virginia Reed testified that the property was worth $ 450,000.00 as of the hearing.

Vermont law provides that "[a]n owner of real property is competent to testify as to the value of the property. *Atwood v. Hill*, 2024 WL 4583268, at *4 (Vt. Super. Ct., Rut. Civ. Div. Sep. 05, 2024) (Burke, Supr. J.) (citing 12 V.S.A. § 1604). See also *Snelgrove v. LeBlanc*, 2018 WL 6167392, at *3 (Vt. Nov. 21, 2018) (unpub. mem). Plaintiff is not an owner of the property and, thus, the statute does not render her competent to provide an opinion as to the value of the property. Vermont law, however, is flexible regarding the competency of witnesses to testify as to value.

---

[6] The Court noted that—while the trial court did not award recovery on these expenses—"in considering plaintiff's money transfers to defendant, the trial court did not limit itself to only those expenditures made on defendant's home, but also weighed plaintiff's contributions to her son's college tuition and to a life insurance policy." *Id*. ¶ 40.

[7] A claim for unjust enrichment does not "to invest th[e] court with a roving mandate to sort through terminated personal relationships in an attempt to nicely judge and balance the respective contributions of the parties." *Slocum v. Hammond*, 346 N.W.2d 485, 491-92 (Iowa 1984).

[8] The Court in *McLaren* suggested the following illustrations to § 28 may be helpful in calculating restitution in the case: cmt. c, illus. 1; cmt. d, illus. 10; and cmt. [e], illus. 12, noting "[i]n those illustrations, the claimant is allowed to recover, but recovery is limited to the claimant's proportional interest in the property based on the fractional share of the claimant's contributions to the purchase price and capital enhancements and improvements." *Id*. ¶ 58 .

> Any person who knows the property and has an opinion of its value may give that opinion in evidence for what it is worth. It is enough if the witness is shown to have some peculiar means of forming an intelligent judgment as to the value, beyond that possessed by men in general.

*Labounty v. Lafleur*, 113 Vt. 226, 227 (1943). See also *New England Power Co. v. Town of Barnet*, 134 Vt. 498, 504 (1976) ("[t]he opinions of well-informed persons based upon the purposes for which the property is suited are to be considered in arriving at fair market value"). The weight to be accorded such opinions is entirely for the court. *Id.*

Plaintiff resided at the property for a number of years. It may be that Plaintiff has a "some peculiar means for forming an intelligent judgment as to the value" of the property. *Labounty*, 113 Vt. at 226. But no testimony as to the basis for the opinion was offered – Plaintiff did not testify as to any personal experience valuing real estate, for example. The court cannot meaningfully judge the basis for Plaintiff's opinion and, thus, the court accords the opinion no weight.

Plaintiff also presented testimony from Virginia Read – a licensed real estate broker since 1978. Ms. Read was familiar with the property generally – she had worked with the parties as a buyer's agent at the time the property was purchased. Ms. Read had not been at or inside the property in seven or eight years. Plaintiff proffered Ms. Read's testimony as an expert opinion.

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

V.R.E. 702. "[T]rial judges in Vermont must … act as gatekeepers who screen expert testimony ensuring that it is reliable and helpful to the issue at hand before *the jury* hears it." *Vecchiarino v. Ridgway*, 2026 WL 582787, at *1 (Vt. Super. Ct., Windh. Civ. Div. Feb. 10, 2026) (citations omitted and emphasis supplied). In a jury trial this gatekeeping function exists "to protect juries from being bamboozled by technical evidence of dubious merit." *New York v. Solvent Chem. Co.*, No. 83-CV-1401C, 2006 WL 2640647, at *1 (W.D.N.Y. Sept. 12, 2006). Additionally, a "court should not admit testimony that is directed solely to lay matters which a jury is capable of understanding and deciding without the expert's help." *United States v. Mulder*, 273 F.3d 91, 101 (2d Cir. 2001). In other words, expert testimony must be limited to testimony "where the subject matter of the testimony is beyond the ken of the average juror." *United States v. Castillo*, 924 F.2d 1227, 1232 (2d Cir. 1991). See also *Salem v. U.S. Lines Co.*, 370 U.S. 31, 35; (1962) *United States v. Zhong*, 26 F.4th 536, 555 (2d Cir. 2022); *Sitts v. Dairy Farmers of Am., Inc.*, 2020 WL 3467993, at *11 (D. Vt. June 24, 2020) ("Expert testimony is not helpful if it simply addresses lay matters which a jury is capable of understanding and deciding without the expert's help"); *Doe v. Hartford Sch. Dist.*,

8

2018 WL 1064572, at *5 (D. Vt. Feb. 26, 2018) ("statements directed to matters which a jury is capable of understanding without an expert witness's assistance" are not expert opinion and must be excluded).

While V.R.E. 702 is equally applicable to bench trials,[9] the court's gatekeeping function is different – "where the gatekeeper and the factfinder are one and the same—that is, the judge—the need to make such decisions prior to hearing the testimony is lessened." *In re Salem*, 465 F.3d 767, 777 (7th Cir. 2006). See also *Seaboard Lumber Co. v. United States*, 308 F.3d 1283, 1302 (Fed. Cir. 2002). The trial "court can hear the evidence and make its reliability determination during, rather than in advance of trial." *In re Salem*, 465 F.3d at 777. Thus, a court "does not err in admitting the evidence subject to the ability later to exclude it or disregard it if it turns out not to meet the standard of reliability established by Rule 702." *Id*. See also, *UGI Sunbury LLC v. A Permanent Easement for 1.7575 Acres*, 949 F.3d 825, 833 (3d Cir. 2020) (in a bench trial the court "may conditionally admit the expert testimony subject to a later Rule 702 determination"); *In re Celsius Network LLC*, 655 B.R. 301, 309 (Bankr. S.D.N.Y. 2023); *United States v. Brown*, 279 F. Supp. 2d 1238, 1243 (S.D. Ala. 2003), *aff'd*, 415 F.3d 1257 (11th Cir. 2005) ("district courts conducting bench trials have substantial flexibility in admitting proffered expert testimony at the front end, and then deciding for themselves during the course of trial whether the evidence meets the requirements of Rule 702") (quotation omitted); *City of Owensboro v. Adams*, 136 S.W.3d 446, 451 (Ky. 2004) ("in a bench trial, the trial court, without a *Daubert* hearing, will often admit the evidence first and then disregard it upon deciding that it is unreliable"); Wright & Miller, 29 Fed. Prac. & Proc. Evid. § 6270 (2d ed.) ("in a bench trial the court may admit expert testimony subject to excluding it later if the court concludes it is unreliable"). Thus, the court must apply its gatekeeping function to the testimony of Ms. Read.

The treatise *Equitable Distribution of Property* directly addresses expert testimony for determining property values:

> When determining whether a witness qualifies as an expert, courts are reluctant to require any specific formal credentials. Valuation of assets for divorce purposes is not a field of expertise in itself but rather a part of the general fields of accounting and economics. Thus, real estate can be valued by realtors as well as appraisers, businesses can be valued by accountants as well as certified business evaluators, and retirement benefits can be valued by accountants as well as by actuaries. The expert need not have prior experience valuing the precise type of asset at issue and need not have prior experience testifying in court. The general rule, in equitable distribution cases as well as other areas, is that an expert witness need only have expertise which is greater than that of the finder of fact. Beyond this point, qualification issues go only to the weight of the evidence.
> . . .
> In order to be most persuasive, of course, the expert should have maximum rather than minimum credentials. Ideally, an expert would have

---

[9] *USGen New England, Inc. v. Town of Rockingham*, 2004 VT 90, ¶ 26.

both education in the relevant area and experience applying working with similar fact situations. Experience is probably more important than education, as courts have given significant weight to experts who have valued similar assets in the past. Likewise, courts have been reluctant to rely upon the testimony of experts with little prior experience. For this reason, *when all other factors are equal, an expert with specific valuation credentials is normally more credible than a simple accountant or realtor.*

2 Equit. Distrib. of Property, 4th § 7:15, Determining value: advice for the parties—Expert testimony (emphasis supplied).

In *USGen New England, Inc. v. Town of Rockingham*, a hydroelectric power plant brought action against the town, challenging whether the town's expert was qualified to render an opinion of the valuation of the plant for property tax purposes (among other claims). The trial court found in favor of the town, and the plant appealed. Specifically, the plant

attacked [the town's expert's] qualifications to render the opinion he offered asserting: (1) he has no training in appraisals or appraisal methodology; (2) he has no familiarity with the Uniform Standards of Professional Appraisal Practice; (3) he has never testified in a court proceeding as an expert; (4) he has never inspected or even visited the Bellows Falls Station; and (5) he is not an expert in predicting future prices in the New England Electrical market.

*USGen New England, Inc. v. Town of Rockingham*, 2004 VT 90, ¶ 38, 177 Vt. 193. The Court affirmed the trial court's decision, concluding

We stress that the trial court has wide discretion to determine the qualifications of an expert witness. *State v. Hicks*, 148 Vt. 459, 461 (1987). If an expert's limitations are clear, both on direct testimony and cross-examination, "the court may not be said to have abused its discretion in allowing the testimony." *Cappiallo v. Northrup*, 150 Vt. 317, 319 (1988). "A professional certification" is unnecessary to qualify as an expert. Reporter's Notes, V.R.E. 702.

*Id*. In a case regarding the sale of a farm, the Court articulated a flexible standard for determining whether an individual is qualified to give an expert opinion on property valuation:

In order to be competent to give his opinion as an expert, as to the value of the property in question, the witness must have been shown to have some peculiar means of forming an intelligent, correct judgment as to its value, beyond what is possessed by man in general. "This knowledge may be derived from buying and selling, valuing and managing, real estate in the town or county where the particular property is situated or by reason of

being acquainted with property in the neighborhood where it is situated especially if accompanied by a knowledge of sales of similar property."
*Geohegan v. Union Elevated R. Co.*, 266 Ill. 482, 107 N. E. 786, Ann. Cas. 1916B, 762.

*Raithel v. Hall,* 97 Vt. 469, 124 A. 586, 587 (1924). And in *Jackson v. Jackson*, the Court affirmed the trial court's decision establishing the fair market value of a marital home according to the husband's testimony as the owner of the home, over the valuation given by the wife's expert.

> Defendant next attacks the trial court's finding that the fair market value of the home premises was $25,000. This was the approximate figure put on it by the plaintiff, while defendant and her expert witness, by an appraisal stipulated into evidence, put it at $35,000. Plaintiff, as an owner, was competent to testify as to the value of the property involved. 12 V.S.A. § 1604. And the weight to be given his testimony is a matter for the trier of fact. *Shortle v. Central Vermont Public Service Corp.*, 134 Vt. 486, (1976). We cannot subscribe to the proposition that the opinion of an expert in the field, however recognized, is necessarily controlling. It is to be treated in the same manner as other testimony, does not establish any material fact as a matter of law, and is not of controlling effect. *Valente v. Commercial Insurance Co.*, 126 Vt. 455, 461, (1967). No error appears in the challenged finding.

*Jackson v. Jackson*, 139 Vt. 548, 550–51 (1981). This court has wide discretion in deciding whether or not they find an expert witness's testimony credible:

The court does not find Ms. Read's analysis persuasive. First, it is not remotely clear that the testimony offered is in any meaningful way an *expert* opinion. Second, and more importantly, there was and is no evidence in the record establishing the validity of the approach proffered by Ms. Read. Stated briefly, Ms. Read came up with a property value by finding two allegedly somewhat similar real estate sales that had occurred in the vicinity and determining the average sale price. Ms. Read acknowledged that she had not been to the Brickyard Road property for at least seven years. She did not make any value adjustments based on the allegedly comparable properties. In sum, the court declines to find the slapdash valuation to have any weight as an expert opinion as to the value of the Brickyard Road property. Accepting that Ms. Read may offer an opinion as to value consistent with *Labounty, supra*, the same flaws exist. There is a paucity – indeed an absence – of detail or analysis as to how and why the valuation is valid and reliable.

In sum, the court declines to find that Plaintiff's opinion as to value or Ms. Read's opinion as to value are entitled to any weight. There is simply no persuasive evidence as the value of the property at the time of separation or as of the date of the final hearing.

In the absence of such information, Plaintiff cannot prevail on her claim for unjust enrichment. Restitution for the benefit allegedly inequitably retained by Defendant

cannot be measured without an understanding of the value of the property at the time of separation or at the time of the final hearing.[10] Because the record does not reflect necessary and required evidence the court cannot calculate the benefit retained or the proportional contributions of the parties.

Plaintiff has not met her burden of proof regarding unjust enrichment.

     c. Quantum Meruit

Plaintiff has also made a claim of quantum meruit against Defendant. A treatise states that quantum meruit

> is an equitable theory of recovery which is based on an implied agreement to pay for benefits received.

> The elements of quantum meruit are: (1) valuable services were rendered or materials furnished; (2) for the person sought to be charged; (3) those services and materials were accepted by the person sought to be charged, and were used and enjoyed by him; and (4) the person sought to be charged was reasonably notified that the plaintiff performing such services or furnishing such materials was expecting to be paid by the person sought to be charged.

> To recover in quantum meruit, a plaintiff must show that its efforts were undertaken for the party sought to be charged. It is not enough to merely show that its efforts benefited the defendant.

Plaintiff's Proof Prima Facie Case § 19:13 Quantum Meruit. See also *Hill v. Shamoun & Norman, LLP*, 544 S.W.3d 724, 736 (Tex. 2018) (elements of a quantum meruit claim). "Under quantum meruit, one should receive the reasonable value of [her] services where [she] justifiably relied on the defendant's request for those services regardless of whether the defendant received a benefit." *In re Est. of Elliott*, 149 Vt. 248, 253 (1988).[11]

---

[10] The court need not resolve the issue of the correct date to apply for the value – whether it be date of separation or date of hearing – because Plaintiff failed to present persuasive evidence on either.

[11] The Court has noted that "there exists some confusion over the interrelationship among the terms 'quasi-contract,' 'unjust enrichment,' 'restitution' and 'quantum meruit.'" *Ctr. v. Mad River Corp.*, 151 Vt. 408, 411 (1989).

> "[U]njust enrichment" has been one of the elements of the theory of restitution. See Restatement of Restitution § 1 (1937). More recently, the doctrine of restitution, including "unjust enrichment," has been partially incorporated into the law of contracts. See Restatement (Second) of Contracts § 344 comment d (1981). The doctrine of "quantum meruit," however, arose separately from either the theory of restitution or contract law, and owes its existence to certain historical peculiarities of the common law practice of count pleading. See *Slade's Case,* 4 Coke Rep. 92 (1602). The distinction between unjust enrichment and quantum meruit lies in the focus for measuring damages. Unjust enrichment

"In the unmarried cohabitant context, quantum meruit recovery is a remedy by which an unmarried cohabitant who provides services to the other cohabitant (and possibly the relationship as a whole) may receive the value of the services upon dissolution of the relationship." Alexander C. Morey & Dixie Grossman, *Property Rights of Unmarried Cohabitants-Nothing New Under the Sun*, 25 J. Am. Acad. Matrim. Law. 87, 92–93 (2012). For Plaintiff to recover for quantum meruit she was required to prove not just that Defendant benefited from her contributions, but also that there was an implied promise by Defendant to pay for Plaintiff's services. 35 Causes of Action 2d 295 (citing *Schwegmann v. Schwegmann*, 441 So. 2d 316 (La. Ct. App. 5th Cir. 1983), and *Marvin v. Marvin*, 557 P.2d 106 (Cal. 1976)); Morey & Grossman, *Property Rights of Unmarried Cohabitants*, 25 J. Am. Acad. Matrim. Law. at 92 ("the unmarried cohabitant seeking quantum meruit recovery must show they rendered their services with the *expectation* of monetary reward" (emphasis supplied)); 66 Am. Jur. 2d Restitution and Implied Contracts § 67 ("an individual cannot establish the elements of a quantum meruit claim where the circumstances do not reasonably notify such individual's cohabitant that such individual expects to be paid for services rendered if and when the relationship ends"). See also *Darling v. Crow*, 2015 WL 2383835, at \*1 (Vt. May 14, 2015) (unpub. mem.) ("[a]s for quantum meruit, the [trial] court noted the lack of any evidence that defendant ever implied that he would pay plaintiff for her services, and that plaintiff's contributions were incidental to the parties' long-term relationship").

The services provided by Plaintiff generally related to improvements to the property. However, "[a] presumption of gratuity may ... arise where the plaintiff contributed money, property, or services toward the acquisition or improvement of property to which the defendant held legal title." 35 Causes of Action 2d 295. In *Smith v. Deneve*, 285 S.W.3d 904 (Tex. Ct. App. 2009), a Texas appellate court addressed a claim of quantum meruit in a matter involving former unmarried cohabitants where the plaintiff had provided materials and service for improvements to real property.

> Smith argues that his and Deneve's conversations about the Linkwood house reasonably notified Deneve that he expected to be paid for the work he did and the money he spent on the house. Specifically, his evidence shows that they discussed the purchase price and the work that needed to be done on the house before the purchase. They jointly decided that an offer should be made on the house. He did substantial work on the house and spent money on materials used in the renovations. His remodeling work increased the value of the house. They planned to fix up the house, sell it for a profit, and use the proceeds to buy a lake house. Deneve argues that none of these facts tends to show that she was reasonably notified that

focuses on the value of the benefit actually conferred upon the defendant. Quantum meruit, on the other hand, is determined by the reasonable value of plaintiff's services regardless of their value to defendant. See generally Childres & Garamella, *The Law of Restitution and the Reliance Interest in Contract,* 64 Nw.U.L.Rev. 433, 434–36 (1969).

*In re Est. of Elliott*, 149 Vt. at 253 n. 2.

> Smith expected to be paid. She points out that "where people are living together as one household, services performed for each other are presumed to be gratuitous, and an express contract for remuneration must be shown or that circumstances existed showing a reasonable and proper expectation that there would be compensation." *Coons–Andersen v. Andersen,* 104 S.W.3d 630, 638 (Tex.App.-Dallas 2003, no pet.).
>
> We agree with Deneve that Smith presented no evidence that the circumstances reasonably notified Deneve that Smith expected to be paid for anything he did or any amounts he spent. Indeed, Smith's evidence tends to show that he did not expect to be paid for his services and expenditures on materials—rather, he expected that he and Deneve would stay together and eventually move into a house on a lake. Instead, the evidence shows that the relationship soured. There is no evidence that the parties gave any thought to this possibility, nor is there any evidence of any facts or circumstances that would have put Deneve on notice that Smith expected to be paid the value of his services if the relationship ended. The evidence shows nothing more than that the parties lived together, expected to stay together, and mutually contributed to the household expenses during the relationship.

*Smith v. Deneve*, 285 S.W.3d 904, 915–16 (Tex. App. 2009). Plaintiff has established that services were provided. Absent from the record before the court is any evidence to suggest that the Plaintiff's services and contributions to improvements to the property were anything more than mutual contributions during the parties' relationship. There is no persuasive evidence establishing that Plaintiff expected to be paid for her contributions – both money and labor – to the improvements to the property.

Plaintiff has not met her burden to prove that Defendant was reasonably notified that Plaintiff performed services expecting to be paid by Defendant and, thus, is not entitled to relief under a claim for quantum meruit.

        d. Promissory estoppel

Plaintiff's third claim seeks recovery for promissory estoppel.

> To prevail on h[er] promissory estoppel claim, plaintiff must show that: (1) defendant made a promise to plaintiff that defendant should have reasonably expected to induce action or forbearance; (2) plaintiff relied on the promise to his detriment; and (3) injustice can be avoided only by enforcement of the promise. *Foote v. Simmonds Precision Prods. Co.*, 158 Vt. 566, 573, 613 A.2d 1277, 1281 (1992) (adopting elements set out in Restatement (Second) of Contracts).

*Pettersen v. Monaghan Safar Ducham PLLC*, 2021 VT 16, ¶ 11. The promise must be "of a specific and definite nature" and "more than a mere expression of intention, hope, desire, or opinion." *Id.* at ¶ 13.

14

Plaintiff's evidence did not establish that Defendant had promised that the Brickyard Road property was one half Plaintiff's. His repeated references to the property as "our house" are not a promise – they are a reflection of the fact that they both lived in the house at the time. It may have been that Plaintiff expected that the house was one half hers, but the court does not find that Defendant made such a promise as part of their cohabitation and relationship. Additionally, as noted above, Plaintiff has failed to present credible evidence as to the present value of the residence or its value at the time of separation. Thus, Plaintiff has failed to present evidence from which the court could properly measure damages even were Plaintiff to establish an enforceable promise – which, again, she did not do.

Plaintiff has not met her burden on the promissory estoppel claim.

ORDER

Judgment is entered for Defendant.

Electronically signed: 7/29/2026 3:45:07 PM pursuant to V.R.E.F. 9(d)

John R. Treadwell
Superior Court Judge


As to the facts:


Carolyn Partridge
Assistant Judge

Lamont Barnett
Assistant Judge